Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 471 | **DATE** | 5/11/2004 |
| **CASE TITLE** | R.J. Corman Derailment Services, LLC vs. International Union of Operating Engineers, Local Union 150, AFL-CIO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [52-1] is granted. Defendant's motion for summary judgment [49-1] denied. Defendant's motion for reconsideration of our dismissal of its counterclaim [43-1] is denied as moot. Plaintiff's motion for judgment on the pleadings [44-1] is denied as moot. Judgment is entered in favor of the Plaintiff and against the Defendant. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 1 2 2004 | |
| | Notified counsel by telephone. | date docketed | 62 |
| ✓ | Docketing to mail notices. | 15 | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | date mailed notice | |
| RO | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



MAY 1 2 2004

| | |
|---|---|
| R.J. CORMAN DERAILMENT SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION 150, AFL-CIO,<br><br>Defendant. | No. 02 C 0471<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

This opinion is the sixth judicial opinion that attempts to resolve the ongoing labor disputes involving R.J. Corman Derailment Services ("Corman"), the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") and the Trustees of the Midwest Operating Engineers Pension and Benefits Funds (the "Funds"). *See Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662 (7th Cir. 2003); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643 (7th Cir. 2003); *Dugan v. R.J. Corman R.R. Co.*, No. 00 C 4114, 2004 WL 816762 (N.D. Ill. Mar. 10, 2004) (Kocoras, J.); *Dugan v. R.J. Corman R.R. Co.*, No. 00 C 4114, 2002 WL 1263989 (N.D. Ill. June 5, 2002) (Kocoras, J.); *Dugan v. R.J. Corman R.R. Co.*, No. 00 C 4114, 2002 WL 31749189 (N.D. Ill. Dec. 5, 2002) (Kocoras, J.); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, No. 02 C 471 (Mar. 18, 2002 Order) (Castillo, J.). Presently before the Court are Corman's and Local 150's cross-motions for summary judgment. Because Local 150's attempt to invoke arbitration is untimely, we grant Corman's motion for summary

62

judgment, (R. 52-1), and deny Local 150's motion, (R. 49-1). Additionally, we deny as moot Local 150's motion for reconsideration of our dismissal of its counterclaim, (R. 43-1), and Corman's motion for judgment on the pleadings, (R. 44-1).

## RELEVANT FACTS

Prior to 2000 Corman voluntarily recognized Local 150 as the collective bargaining representative for derailment employees at its Gary, Indiana facility. (R. 52-3, Pl.'s Facts ¶ 1.) Local 150 and Corman entered into their last collective bargaining agreement ("CBA") on March 19, 1997, and that agreement expired on December 19, 1999. (*Id.* ¶ 6.) Pursuant to the CBA, Corman was obligated to pay bargaining unit employees ("regulars") a series of hourly rates ranging from $12.35 to $22.65. (R. 50, Def.'s Facts ¶ 12.) Corman also employed a number of non-bargaining-unit employees who were paid a lesser hourly rate; these employees were termed "casuals" and they were explicitly excluded from the terms of the CBA. (*Id.* ¶ 15.) During the term of the CBA, Corman employees were paid either every week or every two weeks. (R. 52-3, Pl.'s Facts ¶ 10.) On each payday, both regular and casual employees received a check with a pay stub showing the number of hours worked and the amount the employee was paid. (*Id.*)

Article IX of the CBA outlines a four-step procedure for bringing a grievance against Corman. (R. 51, Def.'s Exs., Ex. 1, CBA ("All grievances within the scope of [the CBA] that may arise on any job covered by [the CBA] shall be handled [as set forth in Article IX]")):

> Step one requires an aggrieved employee orally to notify her union steward and her supervisor of a grievance within ten working days of the grievance's occurrence. If after five additional working days the grievance is not resolved, step two requires the employee to submit a signed copy of her grievance in writing to the Union's Business Representative and to Corman or its representative. Corman then has five working days to respond in writing to the grievance. If this additional step fails to resolve the employee's grievance, step three provides for submission of the complaint to a

2

grievance committee. If within ten additional working days the committee does not
resolve the grievance, the aggrieved employee may proceed to step four and submit
a written demand for arbitration. This written demand for arbitration must be made
within forty-five days of the initial occurrence.

*R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 335 F.3d 643, 646 (7th Cir. 2003).

In November 1999, Corman and Local 150 began negotiating a successor agreement for the CBA that was due to expire in December. These negotiations ultimately were unsuccessful, and Corman closed its Gary Derailment Division and fired all of its employees in that facility in June 2000. But while negotiations were ongoing, in February 2000, Corman provided Local 150 with payroll information listing employees that worked at the Gary facility from December 1998 through December 1999. From these documents it appeared to Local 150 Organizer/Business Representative Dave Fagan that Corman was not complying with the CBA's wage provisions. (R. 50, Def.'s Facts ¶ 21.) Although no employee had ever submitted a wage-discrepancy grievance to Corman, (R. 52-3. Pl.'s Facts ¶¶ 18-20), Fagan, as Business Representative, has a responsibility to conduct an investigation to confirm if a grievance exists, (R. 50, Def.'s Facts ¶ 3). During this same period Fagan asked Local 150 Secretary Steve Cisco to authorize an audit that would be performed in conjunction with, and by the same auditors as, the Funds.[1] (R. 50, Def.'s Facts ¶ 23.) Fagan requested the audit in order to confirm the wage discrepancies he had uncovered in February 2000. On July 25, 2001, the auditor issued its report of findings and sent a copy to Cisco. (*Id.* ¶ 29.) The audit report confirmed Fagan's initial belief that certain

---

[1] The Funds had filed suit in 2000 to compel an audit and collect any under-payments revealed by that audit. Corman prevailed at trial and the Funds appealed to the Seventh Circuit, which reversed in part because it concluded that Corman had improperly classified some employees as casuals who were in fact regulars.

3

bargaining unit employees were underpaid. (*Id.* ¶ 30.)

On September 12, 2001, Local 150 sent a letter to Corman that essentially consisted of an Article IX written grievance for the unpaid wages. (*Id.* ¶ 32.) In that letter Local 150 requested additional documentation from Corman regarding earlier potential wage discrepancies, but stated that it was "prepared to move forward on the wage discrepancies" uncovered thus far. (R. 51, Def.'s Exs., Ex. 7, Sept. 12, 2001 letter.) Accordingly, Local 150 requested a meeting pursuant to step two of the CBA's Article IX grievance process. (*Id.*) On September 19, 2001, Corman responded to the letter. (*Id.*, Ex. 8, Sept. 19, 2001 letter.) In its letter, Corman stated that because there presently was no collective bargaining agreement in effect between the parties, Corman was not obligated to entertain or respond to any claimed grievance. Corman further noted that Local 150 had not followed the CBA's grievance procedure and concluded that for all those reasons, "your letter is ineffective to initiate the long-expired grievance process." (*Id.*) In its next response, on October 30, Local 150 demanded arbitration pursuant to step four of Article IX. Corman again responded by letter, denying that there was any properly filed grievance that was subject to arbitration and maintaining that "it is far too late today to arbitrate any grievance which necessarily occurred in 1999 or before." (*Id.*, Ex. 10, Nov. 7, 2001 letter.) Corman's letter concluded that it "[could not] join in your request to arbitrate."

The parties' correspondence continued through November without resolution, and Corman then filed the present action in January 2002 seeking declaratory and injunctive relief arising from Local 150's demand for arbitration. On March 18, 2002, this Court entered judgment on the pleadings in favor of Local 150, but the Seventh Circuit reversed our decision, holding that it was not clear from the face of the complaint that Local 150's wage dispute was

subject to arbitration and that it was this Court's responsibility to ascertain whether the dispute was arbitrable. On remand, Local 150 filed its Answer and a counterclaim seeking an order compelling arbitration. In November 2003 we dismissed Local 150's counterclaim on the grounds that the union's demand for arbitration was not made within a reasonable time after the expiration of the CBA and that it was otherwise barred by the six-month statute of limitations under 29 U.S.C. § 160(b). We did, however, permit the parties to move for reconsideration, which Local 150 did in December 2003. We converted that motion into a motion for judgment on the pleadings and then subsequently converted that motion into the present motions for summary judgment.

## LEGAL STANDARDS

We will grant a motion for summary judgment when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding cross-motions for summary judgment, we must "look to the burden of proof that each party would bear on an issue at trial" and "require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Conclusory allegations by the party opposing the motion cannot defeat the motion, *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir. 1985), and the party opposing the motion must come forward with evidence of a genuine factual dispute, *Celotex*, 477 U.S. at 322-23.

## ANALYSIS

The threshold inquiry in this case is what legal standard applies to determine whether the wage grievances are timely, and therefore arbitrable. The seminal case regarding arbitrability of post-expiration disputes is *Nolde Brothers v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243 (1977). In *Nolde*, the Supreme Court held that a dispute over severance pay, although arising after the expiration of the CBA, arose under the contract and was therefore subject to the CBA's arbitration provision. *Id.* at 255. In a footnote, however, the Supreme Court hinted that a different outcome might result in cases of "post-termination contractual claims which . . . are not asserted within a reasonable time after the contract's termination." *Id.* at n.8. The Seventh Circuit had occasion to apply the *Nolde* footnote in a case where a discharged employee filed a claim for a retroactive pay increase that was granted several months after the governing CBA's expiration as well as several months after the employee's termination. *Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros. Co.*, 771 F.2d 300 (7th Cir. 1985). The *Kennicott* court held that the grievances at issue were not arbitrable because they were triggered by events occurring more than six months after the CBA's expiration, which the Seventh Circuit believed was not a reasonable amount of time. *Id.* at 304. Later, in *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190 (1991), the Supreme Court clarified that *Nolde* applies "only where a dispute has its real source in the contract," meaning those grievances that "involve[] facts and occurrences that arose before expiration," *id.* at 205-06, or "involve rights which accrued or vested under the Agreement," *id.* at 209.

Corman, relying on *Kennicott,* argues that the arbitrability of these disputes should turn

6

on the question of reasonableness; that is, whether Local 150's grievance was asserted in a reasonable amount of time. Local 150, relying on *Litton*, argues that the salient question is simply whether the conduct underlying grievance arises under or is covered by the CBA, regardless of whether the grievance was pursued before or after the expiration of the CBA. Local 150 further argues that *Kennicott* is factually distinguishable because it involved events that occurred and a dispute that arose *after* the expiration of the contract, whereas in this case employees were not paid wages they earned and were entitled to under the terms of the CBA and while the CBA was still in effect. Therefore, according to Local 150, this case falls squarely within the holding of *Litton*, not *Kennicott*, and therefore we need not reach the reasonableness of Local 150's delay in filing the grievance.

Unfortunately, this case does not fall squarely under either *Kennicott* or *Litton*. Wage under-payments are issues that ostensibly arise under the terms of the CBA. However, a reasonableness inquiry may be appropriate in a situation like this one where the grievance is filed more than eighteen months after the expiration of the contract.[2] Indeed, the Seventh Circuit highlighted the unique posture of this case in questioning "whether a grievance that arises pre-expiration and that could have been raised during the life of the parties' agreement, may

---

[2] As discussed in more detail below, Corman argues that the alleged wage under-payments could have been grieved much earlier than they were and that Local 150's delay in filing the grievance was unreasonable. We find that Local 150 has failed to satisfy its burden of showing that this grievance could not have been brought at an earlier time and its attempt to create a genuine issue of material fact on this issue is unsupported by the record. *See Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162 (7th Cir. 1987) (stating that statements based merely on information and belief do not satisfy the standards of Fed. R. Civ. P. 56(e)); *Space Center Tysons, Inc. v. Opus N. Corp.*, No. 01 C 8435, 2004 WL 603606, at *4 n.20 (N.D. Ill. Mar. 25, 2004) (noting that an "unsupported factual assertion cannot create a genuine issue of material fact").

7

nonetheless be raised for the first time after the agreement has expired." *Corman*, 335 F.3d at 651.

There also are competing policies that warrant consideration. On the one hand, there is a strong presumption in favor of arbitrability of labor disputes, especially where, as here, the parties' contract provides for such a remedy. *Nolde*, 430 U.S. at 254-55. On the other hand, the CBA envisions a swift grievance process that concludes with a demand for arbitration no more than forty-five days after the occurrence of the events giving rise to the grievance. As the Seventh Circuit in *Kennicott* noted, the possibility of parties demanding arbitration of disputes "years or even decades after the expiration of the agreement" is wholly unreasonable. 771 F.2d at 304.

On balance, we believe that a reasonableness inquiry is most appropriate, and that under this standard the grievances are not subject to arbitration because they were brought after an unreasonable amount of time. These wage under-payment disputes could have been grieved earlier. First, Local 150's argument that the employees could not have grieved these disputes as they arose is unconvincing. The parties agree that employees received their hourly pay information on their pay stubs every week or every two weeks. (R. 52-3, Pl.'s Facts ¶ 10.) But Local 150 contends, without any factual support, that none of the aggrieved employees could have filed a grievance because they were improperly classified as casual employees rather regular employees who were covered by the CBA wage rates and thus were unaware that they were being underpaid. Instead, Local 150 maintains that "it took the decision by the Seventh Circuit [in the Pension Funds' case] to determine whether the same individuals, who are at issue in the underlying arbitration in this case over unpaid wages, were subject to the terms and benefits of

8

the collective bargaining agreement at all." (R. 49, Def.'s Br. at 8.) Yet clearly the employees' or Local 150's knowledge of the existence of a grievance did not hinge on the Seventh Circuit's finding that Corman improperly classified certain employees as casuals. The Seventh Circuit's decision was not issued until September 2003, long after the audit and after Local 150's initial grievance in September 2001. Local 150's reliance on the Seventh Circuit's holding is further undermined by the fact that Fagan's review of the payroll records in February 2000 revealed wage discrepancies that were merely confirmed by the subsequent audit.

Local 150 attaches no affidavits from any of the aggrieved employees stating whether they were aware of or reasonably could have discovered the wage discrepancies at the time they were paid. As noted above, a party cannot withstand summary judgment on an issue on which it bears the burden of proof without submitting competent and available evidence in support of its position. *Celotex*, 477 U.S. at 322 (stating that "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Local 150 bore the burden of showing, with competent proof, that these grievances could not have been brought earlier. Having failed to do so, it is easy for us to conclude that an unreasonable amount of time elapsed before the grievances were filed. Corman, therefore, is entitled to summary judgment.

Even if the employees could not have grieved the wage discrepancies as they arose, Local 150 waited an unreasonable amount of time before grieving the alleged wage under-payments. Local 150 tacitly admits that wage discrepancies were apparent from the payroll information that Corman provided during the CBA re-negotiations in February 2000. Yet it

9

waited until September 2001 to file its grievance, claiming that it needed the results of the wage audit in July 2001 before filing the grievance. We see no reason why Local 150, armed with payroll information in February 2000, could not have initiated the grievance process at that time and put Corman on notice that it was seeking redress for alleged wage under-payments. Finally, even if we were to hold that Local 150 acted reasonably in waiting for the audit results before filing its grievance, it still failed to follow the contractually agreed timing for filing a grievance and demanding arbitration. Specifically, Local 150 invoked step two of the grievance process long after the fifteen working days allocated under the CBA, and it first requested arbitration on October 30, 2001, which is well beyond forty-five working days from the July 25, 2001 date it received the results of the audit. This delay again supports our finding that the grievances were not brought within a reasonable amount of time.[3]

Because we hold that under the reasonableness standard Local 150's grievance and subsequent demand for arbitration were untimely, we need not reach the question whether its

---

[3] We emphasize that our finding with respect to Local 150's failure to follow the Article IX grievance procedure relates only to our application of the threshold standard of reasonableness and our determination whether the dispute is arbitrable under that standard. *See Corman*, 335 F.3d at 651 ("Whether Local 150's wage dispute is subject to arbitration is a question that the district court must decide"). We recognize that had we applied the *Litton* standard, any procedural questions such as whether the arbitration process was properly invoked would be left to the arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-58 (1964); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, School, Sightseeing, Charter Bus Drivers, General Promotional Employees of Affiliated Indus., Local Union No. 744 v. Metro. Distributors, Inc.*, 763 F.2d 300, 303 (7th Cir. 1985) (noting that arbitrator decides questions of procedural arbitrability such as whether particular grievance procedures apply to a dispute, whether the procedures have been followed or excused, and whether the unexcused failure to follow such procedures avoids a party's duty to arbitrate).

motion to compel arbitration was barred by the six-month statute of limitations under 29 U.S.C. § 160(b).

## CONCLUSION

For the foregoing reasons, we grant Corman's motion for summary judgment, (R. 52-1), and deny Local 150's motion, (R. 49-1). Additionally, we deny as moot Local 150's motion for reconsideration of our dismissal of its counterclaim, (R. 43-1), and Corman's motion for judgment on the pleadings, (R. 44-1). The Clerk is instructed to enter final judgment pursuant to Federal Rule of Civil Procedure 58 against Local 150.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: May 11, 2004**